UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS M REILLY,<br><br>    Plaintiff,<br><br>    v.<br><br>APPLE INC.,<br><br>    Defendant. | Case No. 21-cv-04601-EMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Docket No. 45 |

### I.     INTRODUCTION

Plaintiff Thomas M. Reilly is the developer of an app called Konverti which facilitates peer-to-peer, in-person currency exchanges. Docket No. 42 ("FAC") ¶ 14. The Court previously dismissed Plaintiff's complaint which alleged that Apple violated antitrust laws and California Business Code Section 17200 for removing Konverti from the Apple Store. Docket No. 41 ("Order"). After the dismissal, Plaintiff filed a first amended complaint ("FAC"), which dropped the antitrust claims and alleged one violation of California Business Code Section 17200. In the FAC, Plaintiff alleges that Apple violated California Business Code Section 17200, also known as the "Unfair Competition Law" ("UCL"), by placing Konverti in the Apple Store and then removing the app two weeks later. FAC ¶ 20. Plaintiff's prayer for relief seeks restitution and injunctive relief to restore Konverti to the Apple Store. *Id.* at 12.

Now pending is Defendant Apple's motion to dismiss Plaintiff's FAC. Docket No. 45 ("MTD"). For the reasons explained below, the Court **GRANTS** Apple's motion to dismiss.

## II. BACKGROUND

A. Factual Background

Plaintiff alleges that he is the developer of an app called Konverti, which he describes as "a Peer-to-Peer Currency Exchange." FAC ¶ 14. Konverti "facilitates person to person exchanges of small amounts of currency" and is allegedly "very low risk from a cash flow and security perspective." *Id.* Plaintiff maintains that each user's "identification is vetted through Apple's identity management system." *Id.* ¶ 15. He also alleges that the Apple Store sells apps, like Konverti, which allow "payment for services and goods such as trading, bartering, ridesharing, food ordering and delivery, [and] personal services." *Id.* ¶ 23.

According to the FAC, Apple users have to purchase and download apps for their mobile phone through the Apple Store. *Id.* ¶ 13. Apple users cannot purchase or download apps on any other forum. *Id.* ¶ 16. Because of this restriction, Plaintiff maintains that placing Konverti in the Apple Store was critical for its success. *Id.* Accordingly, Plaintiff set up an Apple developer account through Apple's Developer Program "for the purpose of developing [sic] Konverti" with the hope of eventually placing it in the Apple Store. *Id.*

During the Apple Developer Program, Plaintiff allegedly provided "full transparency [to Apple] that Konverti facilitates exchanges of small amounts of cash among international travelers in airports." *Id.* ¶ 17. While Konverti was being developed, Apple representatives allegedly informed Plaintiff "that the Konverti concept was in full compliance with all Apple Store policies." *Id.* ¶ 18. Plaintiff alleges that he continued to "invest in the development and marketing of [Konverti]" based on the Apple representatives' assurances. *Id.* ¶ 20.

Konverti was allegedly "approved and placed" in the Apple Store in June 2017 but was "abruptly removed weeks later without clear cause." *Id.* Plaintiff claims that because Konverti was initially "approved and placed" in the [Apple] Store, Plaintiff was induced "to pay [Apple] monies and spend over $150,000,000 developing and marketing Konverti for over two years." *Id.* ¶ 26. Plaintiff alleges that he unsuccessfully appealed Konverti's removal "multiple times" between June 2017 and 2020. *Id.* ¶ 15. He is not aware of any "security, legal or reporting requirements" triggered by Konverti. *Id.*

Apple allegedly provided two reasons for Konverti's removal. First, Apple determined that Konverti was unsafe and an inappropriate concept for the Apple Store. *Id.* ¶ 21. Second, Apple determined Konverti violated Guideline 5.0. of its store policies, which provides that "[a]pps must comply with all legal requirements in any location where you make them available." *Id.* Apple explained that it "continue[d] to find [Plaintiff's] app still facilitates individuals meeting in person for currency exchange, which is not an appropriate concept for the [Apple] Store" and that Plaintiff should "review [his] app concept and remove all content and features that are illegal in the locations where [Plaintiff's] app is available." *Id.*

B. Procedural Background

After multiple appeals with Apple, Plaintiff filed an initial complaint in June 2021 alleging antitrust violations and violation of the UCL. Docket No. 2 ("Compl."). On January 7, 2022, the Court dismissed the entire complaint and granted leave to amend. Order at 16.

The Court dismissed Plaintiff's UCL claim for several reasons. First, Plaintiff's UCL claim failed to the extent that it was derivative of Plaintiff's antitrust claims. *Id.* at 13. In dismissing Plaintiff's antitrust claims, the Court noted that Plaintiff had failed to allege that Apple's actions harmed competition. *Id.* at 11. The initial complaint focused on the ways that Apple's actions harmed Plaintiff individually and did not explain how Apple's actions harmed competition generally. *Id.* Second, to the extent that the UCL claim was predicated on fraud, the complaint did not allege fraud with particularity pursuant to Rule 9(b) and failed to allege all the elements of fraud. *Id.* at 14.

Plaintiff's FAC only alleges a violation of the UCL. FAC ¶¶ 27-37. The claim is deficient for the same reasons that the Court noted in its Order dismissing the initial complaint.

### III.     LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6). To overcome a Rule 12(b)(6) motion to dismiss, a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'"

*Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (quoting *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1107 (9th Cir. 2013)). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "[A]llegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014)).

## IV.    ANALYSIS

Plaintiff asserts one claim for violation of the UCL. The UCL governs "'anti-competitive business practices' as well as injuries to consumers, and has as a major purpose 'the preservation of fair business competition.'" *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (quoting *Barquis v. Merchants Collection Assn.*, 7 Cal.3d 95, 110 (1972)). Its "coverage is sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law." *Rossberg v. Bank of Am., N.A.*, 219 Cal. App. 4th 1481, 1501 (2013) (internal quotations omitted). Accordingly, "any unlawful, unfair or fraudulent business act or practice" can serve as the predicate for a UCL claim. Cal. Bus. & Prof. Code § 17200; *see Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007) ("An act can be alleged to violate any or all of the three prongs of the UCL—unlawful, unfair, or fraudulent.").

Plaintiff does not state explicitly which prongs his UCL claim is predicated on. However, the last paragraph of the FAC suggests that he is basing his UCL claim on the unlawful and unfair prongs: Apple's "acts and practices. . . are *unfair* and violate Business and Professions Code § 17200 because [its] policies and practices. . . violate. . . California Civil Code § 1709, and consequently, constitute [an] *unlawful business act of practice* within the meaning of Business and Professions Code § 17200." FAC ¶ 36 (emphasis added). For the reasons discussed below, the

4

FAC fails to state a claim under either the unlawful prong or the unfair prong of the UCL.

A. <u>Plaintiff's Amended Complaint Fails to State a Claim Under the UCL's Unlawful Prong</u>

Plaintiff alleges that Apple acted unlawfully by violating California Civil Code Section 1709. *Id.* This statute concerns fraudulent inducement and states that "[o]ne who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." Cal. Civ. Code § 1709.

Plaintiff's theory of fraudulent inducement is as follows: When Plaintiff was enrolled in Apple's App Developer Program, Apple told Plaintiff that Konverti complied with all Apple Store policies, leading him to continue developing the app. Docket No. 46 ("Opp.") at 8. Once Konverti was finally placed in the Apple Store, Apple allegedly changed its position—it removed Konverti from the Apple Store and informed Plaintiff that Konverti did not comply with Apple's policies. *Id.*

Based on this theory, there seems to be two instances in which Apple could have made false representations: (1) when Apple communicated that Konverti *complied* with all of Apple's policies during Konverti's development, and (2) after Konverti was placed in the Apple Store and Apple told Plaintiff that Konverti *did not comply* with the Apple Store policies. Regardless of whether Plaintiff bases his fraud claim on the statements made before Konverti was placed in the Apple Store or after it was placed in the Apple Store, the FAC fails to state a claim for two reasons. First, the FAC fails to meet Rule 9(b)'s heightened pleading standard. Second, both interpretations of Plaintiff's theory fail to allege all the elements of fraud.

1. <u>Plaintiff Fails to Allege Fraud with Particularity</u>

Plaintiff's complaint fails to meet Rule 9(b)'s heightened pleading standard. Under Rule 9(b), Plaintiff must allege with specificity the circumstances which constituted Apple's fraud. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). A plaintiff can achieve the requisite level of specificity by alleging the "time, place, and specific content" of the representations defendants made. *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1106 (C.D. Cal. 2015).

The FAC fails to meet this standard for the same reasons that the Court noted in its first

5

dismissal order. In holding that Plaintiff's original UCL claim did not satisfy Rule 9(b), the Court explained that:

> "The complaint includes vague allegations that someone at Apple represented to Plaintiff at an unidentified time, in an unidentified manner, that Konverti complied with all Apple Store policies. This ambiguous, nonspecific and general allegation does not satisfy Rule 9(b)."

Order at 14. Though the FAC adds some new allegations, it still suffers from the same deficiency.

Plaintiff adds some minor details to the FAC, but nothing significant. The initial complaint alleged that "Defendant represented to Plaintiff that the Konverti concept was in compliance with all Apple Store policies and did not violate legal guidelines required." Compl. ¶ 17. Plaintiff refines this allegation in the FAC, but only slightly:

> "Due to Defendant's control of the Apple Store Access, Plaintiff established an Apple developer account through defendant's Apple Developer Program for the purpose of developing [sic] Konverti."

FAC ¶ 16.

> "Defendant, through its Apple Developer Program representatives represented to Plaintiff that the Konverti concept was in full compliance with all Apple Store policies and did not violate legal guidelines required. Based on said representations, Plaintiff was allowed to develop Konverti in the Apple Developer Program."

FAC ¶ 18. Adding the additional facts that Plaintiff enrolled in the Apple Developer Program and that Apple representatives communicated with Plaintiff through that program does not meet Rule 9(b)'s heightened pleading standards for the same reason that the Court identified in its first order.

As was the case with Plaintiff's initial complaint, the FAC still includes vague allegations of fraud. The FAC does not provide any dates nor does the complaint explain whether the representations were made over phone, email, or through some other medium such as an online chat bot. Plaintiff also does not explain what the Apple Developer Program is and the role that the Apple representatives played in the program. Furthermore, Plaintiff does not allege the specific statements that the Apple representatives made. Accordingly, Plaintiff has failed to allege with particularity the circumstances which constituted the fraud.

In his opposition, Plaintiff contends that he does not need to allege these kinds of specifics because the information is within Apple's exclusive control. Opp. at 7. But this is not accurate.

6

1  Plaintiff knows how and when Apple communicated their alleged misrepresentations to him—
2  discovery is not necessary to gather this information.  Plaintiff should have the facts he needs to
3  allege his fraud claim with greater specificity and he has failed to do so.  Aside from this
4  deficiency, the FAC fails to allege all the elements of fraud.

        2.        <u>Plaintiff Fails to Allege all Elements of Fraud</u>

Though Plaintiff alleges in the FAC that Apple violated California Civil Code Section 1709, which is California's statute for willful fraud, Plaintiff argues in his opposition that the FAC actually alleges a negligent misrepresentation theory.  Opp. at 7.  However, regardless of whether Plaintiff's fraud theory alleges a Section 1709 claim or a negligent misrepresentation claim, it fails to plead all the necessary elements of a fraud.

"The elements of a cause of action for fraud in California are: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1126 (9th Cir. 2009).  The elements for negligent misrepresentation are similar.  The one difference is that the plaintiff does not need to allege knowledge of falsity or an intent to deceive the Plaintiff.  *See Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1055 (9th Cir. 2008) ("'where the defendant makes false statements, honestly believing that they are true, but without reasonable ground for such belief, he may be liable for negligent misrepresentation, a form of deceit'") (quoting *Intrieri v. Superior Court*, 117 Cal.App.4th 72, 86 (2004)).  However, for both fraud and negligent misrepresentation claims, the plaintiff must allege that the defendant intended to induce the plaintiff to rely on the statement, and that Plaintiff justifiably relied on defendant's statement.  *Hasso v. Hapke*, 227 Cal.App.4th 107, 127 (2014).  Plaintiff has failed to allege either element.

To the extent that Plaintiff's fraud theory is based on the statements that Apple representatives made *before* Konverti was placed in the Apple Store, and while Konverti was in the Apple Developer Program, Plaintiff has not alleged that Apple *intended* to induce reliance.  There are no facts suggesting that Apple told Plaintiff that Konverti complied with all Apple policies *because* Apple intended Plaintiff to invest more money into Konverti.  *See Borman v.*

7

1  *Brown*, 59 Cal. App. 5th 1048, 1060 (2021) ("negligent misrepresentation *does* require proof of
2  intent to induce another's reliance on the fact misrepresented") (internal quotation omitted).  The
3  FAC only includes the conclusory sentence that "Defendant's reasons [for allowing development
4  of Konverti and then rejecting it] are arbitrary and pretextual and intended to harm Plaintiff."
5  FAC ¶ 24.  There is no obvious reason why Apple would want to induce Konverti to invest more
6  money into Konverti if it had no intent of allowing Konverti to be sold through the Apple Store.
7  Moreover, any assertion of Apple's intent to induce reliance upon its alleged fraud is belied by the
8  fact that Apple *did* initially permit Konverti to be placed in the Apple Store.
9        Furthermore, Plaintiff must also allege "justifiable reliance, i.e., circumstances were such
10  to make it *reasonable* for plaintiff to accept defendant's statements without an independent inquiry
11  or investigation."  *Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal. App. 3d 1324, 1332 (Ct.
12  App. 1986); *Am. Gen. Life Ins. Co. v. Derakhshanfar*, No. CV 12-00164 SJO (PJWx), 2014 WL
13  11430929, at *6 (C.D. Cal. June 16, 2014) (citing *All. Mortg. Co. v. Rothwell*, 10 Cal. 4th 1226,
14  1239 (1995)).  Plaintiff, however, has not alleged that he *reasonably* relied on Apple's assurances
15  about Konverti's compliance.  *See Atari Corp. v. Ernst & Whinney*, 981 F.2d 1025, 1030 (9th Cir.
16  1992) (noting that justifiable reliance is a necessary element of both fraudulent misrepresentation
17  and negligent misrepresentation).  To the contrary, the allegations in the complaint suggest that it
18  would not have been reasonable to rely solely on the statements Apple representatives made
19  during the Apple Developer Program.  The FAC includes the following language from Apple's
20  guidelines:

> "Apps must comply with all legal requirements in any location where you make them available (if you're not sure, check with a lawyer). We know this stuff is complicated, but *it is your responsibility to understand and make sure your app conforms with all local laws, not just the guidelines below*."

24  FAC ¶ 21 (emphasis added).  This section warned Plaintiff he should investigate for himself
25  whether Konverti complied with local laws.
26        If Plaintiff's fraud theory is based on the statements Apple representatives made *after*
27  Konverti was placed in the Apple Store, Plaintiff has not alleged that he relied those statements.
28  To state a claim for negligent misrepresentation, the plaintiff must allege that he changed his

8

position in reliance on the defendant's statements. *See Gagne v. Bertran*, 43 Cal. 2d 481, 488 (1954) ("[T]he representation need not be made with knowledge of actual falsity, but need only be an assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true [citations] and made with intent to induce the recipient to alter his position. . .") (internal quotations omitted); *Tindell v. Murphy*, 22 Cal. App. 5th 1239, 1252 (2018). Plaintiff, however, has not alleged that he made any decisions in reliance on Apple's statement that Konverti was out of compliance with Apple Store policies.

Accordingly, regardless of which Apple statements are considered fraudulent or whether the FAC alleges a Section 1709 claim or a negligent misrepresentation claim, Plaintiff has failed to allege all the elements of fraud. Because of these deficiencies and the FAC's failure to allege fraud with particularity, the FAC does not state a claim under the UCL's unlawful prong. The Court now turns to Plaintiff's allegations under the UCL's unfairness prong.

B. <u>Plaintiff's Amended Complaint Fails to State a Claim Under the UCL's Unfair Prong</u>

To the extent that Plaintiff's UCL claim is based on unfair business practices, it alleges the following:

> "*[Apple]'s conduct is arbitrary and capricious*. Apple allows many applications that encourage [sic] face-to-face meeting exchange of payment for services and goods such as trading, bartering, ridesharing, food ordering and delivery, personal services, etc. Konverti is not less safe than these applications."

FAC ¶ 23 (emphasis added). Plaintiff's allegation that Apple acted arbitrarily and capriciously by removing Konverti from the Apple store is not sufficient to state a UCL claim under the unfairness prong because the complaint does not explain how Apple's arbitrary actions harmed competition, as required under *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,* 20 Cal. 4th 163 (1999).

1. The *Cel-Tech* Standard Applies to Plaintiff's Claim

The Parties disagree over whether the *Cel-Tech* standard applies to Plaintiff's unfairness allegation. Under *Cel-Tech*, the alleged unfairness must "be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition" to serve as a predicate for a UCL claim. *Id.* at 186-87. The defendant does not need to have committed an antitrust violation to satisfy the *Cel-Tech* standard. *Epic Games, Inc. v. Apple Inc.*, No. 4:20-CV-

9

05640-YGR, 2021 WL 4128925, at *116 (N.D. Cal. Sept. 10, 2021). Rather, "violations of the policy or spirit of those laws with comparable effects are prohibited." *Id.* (quotation omitted). Accordingly, to plead that an action was unfair under *Cel-Tech*, the Plaintiff must at a minimum allege that the action was anticompetitive.

Plaintiff contends that *Cel-Tech's* tethering standard does not apply to his claim because he is an individual business owner, rather than Apple's competitor. Instead, he seeks the application of the broader test for unfairness that has been applied to consumer cases. Plaintiff maintains that the Court should apply the California Second District Court of Appeal's three-part standard from *Camacho v. Automobile Club of Southern California* instead of the *Cel-Tech* standard. *Camacho v. Automobile Club of Southern California*, 142 Cal. App. 4th 1394, 1403 (2006).

In *Camacho*, the Court of Appeal refused to apply the *Cel-Tech* standard in a consumer case and held that an unfair practice in that context is one where "(1) the consumer injury is substantial; (2) the injury outweighs any countervailing benefits to consumers or competition; and (3) it was an injury that consumers themselves could not reasonably have avoided." *Id.* at 1403. The court reasoned that applying the *Cel-Tech* standard to a consumer case would "not comport with the broad scope of section 17200." *Id.* at 1402. Requiring the consumer-Plaintiff to tether its UCL allegation to an existing antitrust policy would "undercut[] the ability of the courts to deal with new situations, and new abuses" of consumers by businesses. *Id.* at 1403.

In a footnote, the Court in *Cel-Tech* stated that the "tethering" standard it articulated only applies to cases between competitors and not cases involving consumers. *Cel-Tech*, 20 Cal. 4th at 187, n. 12. Since *Cel-Tech*, however, California courts have been split on whether the tethering standard applies in the consumer context, or if a different "unfairness" test applies.[1] *See Bardin v.*

---

[1] The Ninth Circuit has yet to weigh in on the issue of whether the *Cel-Tech* standard applies to consumer cases, despite having affirmed dismissals of the UCL under the unfairness prong. *See Hodsdon v. Mars, Inc.*, 891 F.3d 857, 866 (9th Cir. 2018); *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1170 (9th Cir. 2012). Most recently, in a case involving consumers living with HIV/AIDS, the Ninth Circuit described the standard as follows: "Under the UCL's unfairness prong, courts consider either: (1) whether the challenged conduct is tethered to any underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law, [citation]; (2) whether the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, [citation]; or (3) whether the practice's impact on the victim outweighs the reasons, justifications and

*DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1267 (2006) (discussing the split and collecting cases).

The issue, then, is whether Plaintiff's harm—money expended on Konverti and lost Konverti revenue—is closer to the harm consumers experience when they are deceived or the harm competitors experience when businesses engage in anticompetitive practices. The Court finds that Plaintiff is closer to a competitor than a consumer.

The Ninth Circuit's decision in *Levitt v. Yelp! Inc*. demonstrates that it is not the form of the plaintiff (individual versus corporate), but the *nature* of the plaintiff's asserted interest that counts when determining whether the unfairness allegation should be analyzed under *Cel-Tech* or a broader standard. In *Levitt*, the court held that the *Cel-Tech* standard applies where "the crux of the [plaintiff's] complaint is that [defendant's] conduct unfairly injures their economic interests to the benefit of other businesses." *Levitt*, 765 F.3d at 1136. Notably, several of the plaintiffs in *Levitt* were individuals who owned businesses that were allegedly harmed by Yelp!'s actions. *Id.* The fact that some of the plaintiffs were individuals, and not direct competitors with Yelp!, did not change the application of *Cel-Tech*. *Id.* Because the crux of the individuals' claim was that Yelp!'s conduct injured the individuals' businesses to the benefit of other businesses who advertised with Yelp!, the plaintiffs had to allege that Yelp!'s actions harmed competition to state a UCL claim under the unfairness prong. *Id.*

Like the individual plaintiffs in *Levitt* whose businesses were harmed by Yelp!'s actions, Plaintiff is a business owner whose business was allegedly harmed by Apple's conduct. FAC ¶¶ 1, 34. Specifically, he alleges that Konverti is "only economically viable if added to both the Apple Store and Google Store. . . If [Apple] insists on blocking Konverti from the Apple Store, Plaintiff [will] continue to be irreparably harmed in the form of loss of market share, market opportunity and in loss of reputation." *Id.* ¶ 30. Plaintiff has not alleged that he is a consumer who was actively deceived by Apple's practices. Though the UCL does not define consumer, the CLRA—which often serves as a predicate to UCL claims—defines consumer as "an individual

---

motives of the alleged wrongdoer." *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214-15 (9th Cir. 2020) (internal quotations omitted).

who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes." Cal. Civ. Code § 1761(d). Plaintiff, however, has not alleged that he is purchasing Apple products and services. Rather, he alleges that he is a business owner seeking to avail himself of Apple's platform. FAC ¶¶ 34-35. Though Plaintiff is not a direct competitor with Apple, the "crux" of his allegations is that Apple harmed his business's economic interests by removing Konverti from the Apple store. As was the case with the individuals' UCL claims in *Levitt*, the *Cel-Tech* standard also applies to Plaintiff's claim. Accordingly, to state a UCL claim under the unfairness prong, Plaintiff must allege that Apple's actions can be tethered to some "actual or threatened impact on competition." *Cel-Tech Commc'ns, Inc.,* 20 Cal. 4th at 186-87.

2. Plaintiff has Failed to State a Claim Under the *Cel-Tech* Standard

The FAC fails to state a claim under the UCL's unfair prong because it does not allege that Apple's actions harmed or impacted competition, as is required under *Cel-Tech*. 20 Cal. 4th at 186-87. Indeed, in dismissing Plaintiff's antitrust claims, this Court held that the complaint failed to allege that removing Konverti from the Apple Store harmed competition. Order at 11. Plaintiff has not cured this deficiency and again fails to allege any facts which suggest that "arbitrarily" removing Konverti from the Apple Store harms competition, rather than simply harming Plaintiff individually.

In his initial complaint Plaintiff alleged that,

> "Apple has deceptively and unfairly: failed to implement policies and procedures that would prevent deceptive and unfair conduct; induced Plaintiff to develop an application by making false representations and then arbitrarily removing it from the Apple Store based on information that was available to Apple since the beginning of the relationship but does not qualify reasons for removal."

FAC ¶ 81. Plaintiff asserts the exact same theory of unfairness without adding any additional allegations to the FAC. *See* Opp. at 6. Like the initial complaint, the FAC focuses on how Apple's actions harmed Plaintiff's personal business interests, not on how Apple's actions harm competition generally.

Furthermore, Plaintiff seems to concede in his opposition that he has not alleged how Apple's actions harmed competition. Notably, the opposition does not even attempt to apply the

12

*Cel-Tech* standard to the facts alleged in the complaint. Rather, Plaintiff argues that his claim should be analyzed under the *Camacho* standard, which, as explained above, is inapplicable here because Plaintiff has not alleged that he is a consumer.

To allege that Apple's actions are unfair, Plaintiff, at a minimum, must allege that the actions were anti-competitive, and Plaintiff has failed to do so. *See Epic Games, Inc.*, 2021 WL 4128925, at *117 (holding that "although Epic Games has not proven a present antitrust violation, the anti-steering provisions 'threaten[ ] an incipient violation of an antitrust law' by preventing informed choice among users of the iOS platform). Accordingly, the FAC fails to state a claim under the UCL's unfairness prong.

C. <u>Leave to Amend</u>

Leave to amend would be futile. Plaintiff was unable to cure any of the deficiencies pointed out by the Court is its last dismissal order, demonstrating that Plaintiff does not have the necessary facts to cure the issues with the complaint. *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051-52 (9th Cir. 2008) (finding that amendment would be futile where plaintiff was granted leave to amend once and the amended complaint contained the same defects as the prior complaint); *Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996) ("The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint."). Plaintiff does not indicate what additional facts he would allege to fix the deficiencies in his fraud and unfair competition allegations. Accordingly, leave to amend is denied and the complaint is dismissed with prejudice.

///
///
///
///
///
///
///
///

## V.  CONCLUSION

For the foregoing reasons Defendant's motion is **GRANTED** and the FAC is dismissed with prejudice.

This order disposes of Docket No. 45.  The Clerk of the Court is directed to enter judgment for Defendant Apple and close this case.

**IT IS SO ORDERED**.

Dated: April 25, 2022

_____
EDWARD M. CHEN
United States District Judge